# EXHIBIT 4

MC-275

Name  IVAN VON STAICH

Address  Correctional Training Facility

P.O. Box 689,  Rm: C-Wing-137u

Soledad, CA  93960-0689

CDC or ID Number  E-10079

In Pro Per

**FILED**

APR - 5 2007
Court of Appeal, First App. Dist.
DIANA HERBERT
By_____ DEPUTY

## IN THE APPELLATE COURT OF THE STATE OF CALIFORNIA
*(Court)*

### FIRST APPELLATE DISTRICT

### DIVISION TWO

| |
|---|
| IVAN VON STAICH |
| Petitioner |
| vs. |
| A. P. KANE, Warden of CTF. |
| Respondent |

PETITION FOR WRIT OF HABEAS CORPUS

No. _____

*(To be supplied by the Clerk of the Court)*

**A117289**

## INSTRUCTIONS — READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.   **See attached exhibits and auguments.**

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]
Optional Form                         PETITION FOR WRIT OF HABEAS CORPUS                 Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

This petition concerns:

[ ] A conviction                    [X] Parole

[ ] A sentence                      [ ] Credits

[ ] Jail or prison conditions       [ ] Prison discipline

[X] Other (specify): Federal and state due process violation, based on the BPH Commissioners failure to hold a mandatory parole hearing within four (4) years total loss of jurisdiction requiring immediate release on parole

1. Your name: Ivan Von Staich

2. Where are you incarcerated? Correctionnal Training Facility, Soledad, California

3. Why are you in custody? [X] Criminal Conviction    [ ] Civil Commitment

   Answer subdivisions a. through i. to the best of your ability.

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      Currently serving one count second degree murder (1983 arrest)

   b. Penal or other code sections: Cal. Penal Code §190

   c. Name and location of sentencing or committing court: Orange County Superior Court
      700 Civic Center Dr., West
      Santa Ana, Ca. 92702-2024

   d. Case number: C-53851

   e. Date convicted or committed: December 2, 1985

   f. Date sentenced: May 30, 1986

   g. Length of sentence: 15 years to life term.

   h. When do you expect to be released? When this Court orders the BPH to release me.

   i. Were you represented by counsel in the trial court? [X] Yes.  [ ] No. If yes, state the attorney's name and address:

      Jack Earley current address unknow.

4. What was the LAST plea you entered? (check one)

   [X] Not guilty  [ ] Guilty  [ ] Nolo Contendere  [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   [X] Jury  [ ] Judge without a jury  [ ] Submitted on transcript  [ ] Awaiting trial

   See Exhibit B, for reference to "4" year denial.

6.  GROUNDS FOR RELIEF

Ground 1:  State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

<u>SEE ATTACHED PAGES</u>

_____

_____

_____

a.  Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who did exactly what to violate your rights at what time (when)* or place *(where). (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

<u>SEE ATTACHED PAGES.</u>

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b.  Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

<u>SEE ATTACHED PAGES.</u>

_____

_____

_____

7. Ground 2 or Ground _____ (*if applicable*):

SEE ATTACHED PAGES

a. Supporting facts:

SEE ATTACHED PAGES

b. Supporting cases, rules, or other authority:

SEE ATTACHED PAGES

## GROUND ONE

THE BOARD OF PRISON HEARINGS FAILED TO CONDUCT A SUBSEQUENT PAROLE HEARING AFTER A FOUR (4) YEAR DENIAL AND, THEREFORE, HAS LOST JURISDICTION OVER PETITIONER'S CASE AND THIS HONORABLE COURT NOW HOLDS RELEVANT JURISDICTION, FOR THE SETTING OF PETITIONER'S PAROLE RELEASE DATE UNDER STATE AND FEDERAL STATUTORY LAWS.

## GROUND TWO

THE BOARD OF PRISON HEARINGS FAILED TO CONDUCT PETITIONER'S PAROLE SETTING HEARING AS REQUIRED BY STATE LAW, CAL. PENAL CODE §§ 3041 (a) and (b), 3041.5, WHICH DEPRIVED PETITIONER OF HIS FEDERAL DUE PROCESS RIGHTS UNDER THE UNITED STATES CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS.

## AUTHORITIES CITED:

Board of Regents v. Roth, 408 U.S. 564, 570-571 (1972)

Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 12 (1979)

Board of Pardons v. Allen, 482 U.S. 369, 378 (1987)

Jancsek v. Oregan Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987)

McQuillion v. Duncan, 306 F.3d 895, 901-902 (9th Cir.2002)

Biggs v. Terhune, 334 F.3d 910, 914-915 (9th Cir.2003)

People v. Gahdes (1997) 58 Cal.App.4th 1520

Favorite v. County of Los Angeles (1999) 68 Cal.App.4th 435

Terhune v. Superior Court (1998) 65 Cal.App.4th 864, 872-873

In re Elkins (2006) 50 Cal.Rptr.3d 503

In re Lee (2006) 49 Cal.Rptr.3d 931, 941

People v. Duran (1983) 140 Cal.App.3d 485, 503

In re Neal (1980) 114 Cal.App.3d 141, 144; In re Hogan (1986) 323 Cal.Rptr. 90, 92

People v. Austin (1981) 30 Cal.3d 155, 163

In re Carabes (1983) 193 Cal.Rptr. 65, 67

People v. Hinojosa (1980) 162 Cal.Rptr. 793, 798

People v. Jefferson (1999) 86 Cal.Rptr.2d 893, 899

4a

Felce v. Fiedler, 947 F.2d 1484, 1499 (7th Cir.1992)

Watson v. Disabto, 933 F.Supp. 390 (D.N.J. 1996)

U.S. v. Martin, 63 F.3d 1422, 1433 (7th Cir.1995)

## CALIFORNIA PENAL CODE:

§§3041 subds. (a) and (b), 3041.5, 1487 subds. 1–2 and 3

## CALIFORNIA CODE OF REGULATIONS, TITLE 15 § 2050 et seq

## TABLE OF EXHIBITS:

A. Judgment of Commitment

B. November 5, 2002, four (4) year denial of parole

C. PETITIONER'S RECENT PSYCHOLOGICAL REPORT
D. Superior Court denial.

## STATEMENT OF CASE

Petitioner is currently serving a one count second degree murder, based on his 1983 arrest and jury conviction. (See Exhibit "A" for reference to Judgment of Commitment.) Petitioner was received by the California Department of Corrections & Rehabilitation (heretoafter CDC&R) on February 21, 1989 and was granted all presentence credits on his 15 to life term, as required under People v. Rowland (1983) 134 Cal.App.3d 1, 13-14; the BPH is required to grant all presentence credits at the inmates M.E.P.D. hearing in accordance with **People v. Carpenter** (1979) 160 Cal.Rptr. 386, 99 Cal.App.3d 527, 528-31.

On November 5, 2002, Petitioner's M.E.P.D. was conducted and he was found unsuitable for parole for four (4) years. (See Exhibit "B" for reference to four (4) year denial by BPT Commissioners.) This stated period of denial by the hearing penal required the BPH to conduct the next statutory parole release hearing at four (4) years and "no later." See Cal. Penal

Code §3041.5 subd. (b). As of the signing of this petition for writ of habeas corpus, the BPH Commissioners have **not** conducted Petitioner's subsequent parole setting hearing. Furthermore, the BPH Commissioners have **not** notified Petitioner of any valid reason why they have failed to conduct his mandatory parole hearing, on his one count second degree murder conviction and, therefore, are violating the following cases: See People v. Duran (1983) 140 Cal.App.3d 485, 503; In re Neal (1980) 114 Cal.App.3d 141, 144; In re Hogan (1986) 323 Cal.Rptr. 90, 92; People v. Austin (1981) 30 Cal.3d 155, 163; In re Carcabes (1983) 193 Cal.Rptr. 65, 67; People v. Hinojosa (1980) 162 Cal.Rptr. 793, 798; People v. Jefferson (1999) 86 Cal.Rptr. 2d 893, 899; Watson v. Disabto, 933 F.Supp. 390 (D.N.J. 1996); Felce v. Fiedler, 947 F.2d 1484, 1499 (7th Cir.1992); U.S. v. Martin, 63 F.3d 1422, 1433 (7th Cir.1995).

The BPH Commissioners do not provide Administrative Remedies for the scheduling of parole hearings. (See Cal. Code Regs. tit 15, §2050.) Therefore, Petitioner has absolutely no Administrative Remedy to resolve this matter of great concern.

### PRAYER FOR RELIEF

WHEREFORE, Petitioner is without remedy except by habeas corpus. Petitioner prays for relief in the form of an "Order" from this Court granting his release on parole. Petitioner maintains that if this Court orders the BPH Commissioners to conduct a late hearing, they will surely retaliate, by giving Petitioner another 4 or 5 year unjust parole denial. Petitioner's recent Psychological Evaluation is excellent and there is not just cause to keep this ailing 50 year old prisoner any longer

( See Exhibit "C" for reference to recent psychological report and other relevant documents supporting immediate parole of the Petitioner, which has now been incarcerated nearly 24 years.) Therefore, Petitioner respectfully request this petition be granted. (See In re Lee (2006) 49 Cal.Rptr.3d 931, 941; and In re Elkins (2006) 50 Cal.Rptr.3d 503.

Dated this 3d day of March , 2007.

                          Respectfully Submitted,


                          IVAN VON STAICH
                          Petitioner In Propria Persona
                          Without Bar Licensed Counsel

4d

## MEMORANDUM OF POINTS AND AUTHORITIES

The due process clause of the United States Constitution applies when an action deprives a person of liberty or property, when there is a claimed denial of due process, the Court must inquire into the nature of the individual's claimed interest:

> "[T]o determine whether due process requirements apply in the first place, we must look not at the 'weight' but to the nature of the interest at stake," Board of Regents v. Roth, 408 U.S. 564, 570-571 (1972). "A person clearly must have more than an abstract need or desire for it. He must, instead, have a legitimate claim of entitlement to it." (Id., at p. 557.)

California's parole scheme gives rise to a protected liberty interest in release on parole. McQuillion v. Duncan, 306 F.3d 895, 901-902 (9th Cir. 2002); Jancsek v. Oregon Bd. Of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 12 (1979); Biggs v. Terhune, 334 F.3d 910, 914-915 (9TH Cir. 2003); In re Rosenkrantz, 29 Cal.4th 616 (2003).[1]

Therefore, petitioner is entitled to the process outlined in Greenholtz, supra, viz., notice, opportunity to be heard, a statement of reasons for decision, and limited right to call and cross-examine witnesses. The determination that petitioner is unsuitable for parole must be supported by some evidence bearing some indicia of reliability. Biggs, supra, 334 F.3d at 914-915.

California's Penal Code § 3041 clearly establishes that petitioner "shall" have his "initial" parole hearing "one year prior"

---

[1]    That is so because the parole statute, Penal Code § 3041, uses mandatory language ("The panel or board shall set a release date unless it determines" further incarceration is necessary in the interest of public safety) which "creates a presumption that parole release will be granted," unless the statutorily defined determinations are made. Board of Pardons v. Allen, 482 U.S. 369, 378 (1987) (quoting Greenholtz, supra, 442 U.S. at 12).

4e

However, to this date there are "**no regulations**" for setting parole hearing and, therefore, this Court holds Class Action jurisdiction over this delayed BPH parole hearing and the authority to grant Petitioner's parole release forthwith.

Dated this 3₁ day of March, 2007.

Respectfully Submitted,

IVAN VON STAICH
Petitioner In Propria Persona
Without Bar Licensed Counsel

4g

8. Did you appeal from the conviction, sentence, or commitment?  ☐ Yes.  ☐ No.   If yes, give the following information:

  a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"): _____

_____

  b. Result: _____   c. Date of decision: _____

  d. Case number or citation of opinion, if known: _____

  e. Issues raised:  (1) _____

        (2) _____

        (3) _____

  f. Were you represented by counsel on appeal?  ☐ Yes.  ☐ No.  If yes, state the attorney's name and address, if known:

_____

9. Did you seek review in the California Supreme Court?  ☐ Yes.  ☐ No.   If yes, give the following information:

  a. Result: _____   b. Date of decision: _____

  c. Case number or citation of opinion, if known: _____

  d. Issues raised:  (1) _____

        (2) _____

        (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

        NOT APPLICABLE.
_____

11. Administrative Review:

  a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

  California Code of Regulations, Title 15 § 2050 sets forth criteria for appealing the Board of Prison Terms

  actions: "Any person under the board's jurisdiction may appeal any decision of the board which affects that

  person except the decision to schedule a hearing." There being no administrative remedy available to

  petitioner, this Court has jurisdiction to hear this case.

_____

_____

_____

  b. Did you seek the highest level of administrative review available?  ☒ Yes.  ☐ No.
     *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☐ Yes. If yes, continue with number 13. ☒ No. If no, skip to number 15.

13. a. (1) Name of court: _____

     (2) Nature of proceeding (for example, "habeas corpus petition"): _____

     (3) Issues raised: (a) _____

         (b) _____

     (4) Result (Attach order or explain why unavailable): _____

     (5) Date of decision: _____

   b. (1) Name of court: _____

     (2) Nature of proceeding: _____

     (3) Issues raised: (a) _____

         (b) _____

     (4) Result (Attach order or explain why unavailable): _____

     (5) Date of decision: _____

   c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
    There has been no delay in this filing.

_____

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. If yes, explain:

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

**The First Appellate Court holds jurisdiction over the Marin County Superior Court.**

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 4-3-07                                    ▶ _____
                                                   (SIGNATURE OF PETITIONER)

# EXHIBIT "A"

Insert name of court, branch court, if any, and mailing address
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE _____

FOR COURT USE ONLY

# FILED

MAY 30 1986

GARY L. GRANVILLE, County Clerk

By _____ DEPUTY

---

PEOPLE OF THE STATE OF CALIFORNIA

DEFENDANT:  STAICH, Ivan          [x] Present    [ ] Not Present

[x] JUDGMENT OF COMMITMENT TO:    [x] STATE PRISON    [ ] COUNTY JAIL
[ ] ORDER GRANTING PROBATION      [x] AND MINUTE ORDER

CASE NUMBER:
C-53851

---

| Date of hearing: | Dept. No.: | Judge: ROBERT R. | Clerk: | Reporter: |
|---|---|---|---|---|
| MAY 30, 1986 | 39 | FITZGERALD | R. Weisman | Armella Martin |
| Counsel for People: | | Counsel for defendant: | | Probation Officer: |
| Rick King, DDA | | Jack Earley | | Louise Pritchard |

1. Defendant was convicted of the commission of the following crime on (Date).  12/3/85

| Count | Code Section | Crime | Degree | By Jury, Court or Plea (Specify) |
|---|---|---|---|---|
| 1 | 187 PC | Murder | 2nd | Jury |

*Court Order see page 2!*

2  Defendant  [ ] was arraigned  [X] waived arraignment for judgment.

3  The court having read and considered the probation report and no legal cause having been shown why judgment should not be pronounced

   a.  [X]  Sentences defendant to State Prison for the term prescribed by law.  15 years to life + 2 years for the enhancement on this count 12022.5 P.C.
       Specifies, pursuant to Pen. C. 1202b, the minimum term of imprisonment shall be _____
   b.  [ ]  Sentences defendant to County Jail for the period of (Specify number of days) _____
   c.  [ ]  Suspends imposition of sentence and defendant is placed on probation for the period of: _____
       [ ] upon conditions set forth in attachment 3d.

4  [X]  Defendant, convicted of more than one count, shall:
   a.  [X]  serve the sentence as to each count as follows:  (See attached Abstract of Judgment DSL 290.
                Consecutive With                       Concurrent with
       1 + enhancement      Count 2 + enhancement
                     and prior

   b.  [X]  serve the counts made consecutive in the following order:

   [ ]  shall serve this sentence with respect to any prior uncompleted sentence  a. [X] concurrent;  [ ] cons
   as set forth below or in attachment 5c

   Execution of Sentence is
   a.  [ ]  stayed on the following count _____ pending appeal, with the stay to become permanent
       when the sentence is completed as to count: _____
   b.  [ ]  suspended and defendant is placed on probation for the period of: _____
       [ ] upon conditions set forth in attachment 6b.
   [ ]  No allegation to enhance punishment was made in count _____
   8  [X]  It was alleged
   a.  [ ]  Defendant was armed with a deadly weapon at the time of the commission or attempted commission of the crime charged
       in count _____ [ ] and allegation stricken as to count _____

(Continued on reverse side)

This form satisfies the requirements of Penal Code 1213.5 (Abstract of Judgment and Commitment). Singular includes the plural  This form is to be used in judgments other than death  A copy of probation report shall accompany this form pursuant to Penal Code 1203c and a copy of any supplementary probation report shall be transmitted to the Department of Corrections  Attachments may be used but must be incorporated by reference

b. [X] Defendant used a firearm in ca_____ and allegation stricken as to count: _____
c. [ ] Defendant was armed at the time of arrest with a concealed deadly weapon within the meaning of Pen. C. 3024
     [ ] and allegation stricken.
d. [ ] Other (Specify and indicate if stricken): _____

9. [X] The Court finds the defendant
  a. [ ] was armed at the time of commission or attempted commission of the crime with a deadly weapon within the meaning of
    (1) [ ] Pen C. 3024 as to count: _____ [ ] but strikes the finding as to count: _____
    (2) [ ] Pen C. 12022 as to count: _____ [ ] but strikes the finding as to count: _____
    (3) [ ] Pen C. 1203 (Specify weapon): _____
       as to count: _____ [ ] but strikes the finding as to count: _____
  b. [ ] was not armed at the time of commission or attempted commission of the crime within the meaning of
    (1) [ ] Pen C. 3024 as to count: _____
    (2) [ ] Pen C. 12022 as to count: _____
    (3) [ ] Pen C. 1203 as to count: _____
  c. [X] did use a firearm as to count: 1_____ [ ] but strikes the finding as to count: _____
    (1) [X] The use was one use for the following counts: . _____1_____ The additional penalty shall
       run consecutively to the sentence on the last count to be served.
  d. [ ] did not use a firearm to count: _____
  e. [ ] was armed at the time of arrest with a concealed deadly weapon within the meaning of Pen. C. 3024 [ ] but strikes
     the finding.
  f. [ ] was not armed at the time of arrest with a concealed deadly weapon within the meaning of Pen. C. 3024.
  g. [ ] Other (Specify and indicate if stricken):

10. [X] Prior convictions which affect defendant's sentence were alleged and disposed of [ ] as follows   [X] as set forth in
     attachment 10.X    (See Abstract of Judgment and Information)

| Conviction date | Jurisdiction | Crime and code Section | Applies to Count | Disposition |
|---|---|---|---|---|

11. The court finds defendant   a. [ ] is  [X] is not an habitual criminal under Pen C. 644a.
                b. [ ] is  [X] is not an habitual criminal under Pen C. 644b.
12. The court pronounced sentence on (Date): 5/30/86 . and defendant was held in custody, through and including
   the date of pronouncement of sentence for (Total no. of days): 1,097 as follows
| Count | Time other than Dept. of Corrections | Dept. of Corrections Time |
|---|---|---|
|  | 878 days |  |
|  | 219 work time credit |  |

13. Defendant is remanded to the custody of the sheriff
  a. [ ] For the period of (Specify no. of days). _____ [ ] upon conditions and recommendations set forth in attachment 13a.
  b. [X] To be delivered  [X] at the earliest convenient time  [ ] after 48 hours, excluding Saturdays, Sundays and holidays
     [Pen C. 1203c] into the custody of the Director of Corrections at
    (1) [ ] California Institution for Women—Frontera   (3) [X] California Institution for Men—Chino
    (2) [ ] California Men's Facility—Vacaville   (4). [ ] Other:
14. [ ] The court requests a copy of the diagnostic study and recommendations as provided in Pen C. 1168.
15. The court advised defendant of all appeal rights as required in CRC Rule 250 and defendant acknowledged understanding them.
16. [ ] Other (See attachment 16)
Dated: 5/30/86   ROBERT R. FITZGERALD          _____
            (Type or print name)              (Signature of Judge of the Superior Court)

TOTAL NO. of boxes checked: 20

### CLERK'S CERTIFICATE
I hereby certify that the foregoing is a correct copy of the original on file in my office.

                          Clerk of the superior Court

[Seal]

                By _____ Deputy

MAY 30 1986

5-6-89

Inst Staff/-

re: E-10079 STAICH

We have verified the post sentence 997 days via phone conversation with Orange County. He was in custody from 4/86 — 2/89 (arrested on escape charges 4/86). He appears to have been pending trial on his escape - he was pro per - therefore, it took a long time. The Orange County Deputy (Hyatt) - 714-647-6090 stated he was found not guilty on escape charge. He wrote from S. Lane, CCR Sup, LPH - attached.

↓ 1-0-file          3-14-89                    R. Darden
   Post-sent verified                          CCR Sup.
   w/ Orange County —
   Subj. was in cust
   from 4/86 — 2/89 (arr. from) (esc. 4/86)
   looks like he was
   pending trial on his
   escape — he was
   pro-per — therefore took
   a long time — found N.G.
   on escape chgs.
         S. Lane

EXHIBIT "B"

BOARD OF PRISON TERMS                                                   STATE OF CALIFORNIA
LIFE PRISONER DECISION FACE SHEET

| PERIOD OF CONFINEMENT | | | |
|---|---|---|---|
| *(RECORDS OFFICER USE ONLY)* | YR | MO | DAY |
| Adjusted Period of Confinement.. | | | |
| Date Life Term Begins .... | 93 | 05 | 25 |
| At Large Time...... | + | | |
| PAROLE DATE | = | | |

## MISCELLANEOUS

*Parole denied four (4) Years.*

Panel recommendations and requests:

☑ Become        Remain disciplinary free.

Work towards reducing his/her custody level.

☑ Upgrade   ☑ vocationally   ☑ educationally

☑ Participate   ☑ self-help   therapy.
in          (and)

Transfer      Cat. X        Cat. T.
to

---

PENAL CODE SECTION 3042 NOTICES        ☒ SENT      (Date) 09/24/02

COMMITMENT OFFENSE

| PC 187 | MURDER 2ND |
|---|---|
| (Code Section) | (Title) |
| C53851 | 01, & 02 |
| (Case Number) | (Count Number) |

| Date Received by CDC | Date Life Term Begins | Controlling MEPD |
|---|---|---|
| 02/21/89 | 05/25/93 | 11/21/03 |

| Type of Hearing | If Subsequent Hearing, Date of Last Hearing |
|---|---|
| ☒ INITIAL   ☐ SUBSEQUENT (Hearing No.) | |

Department Representative
D.S. LEVORSE, C&PR

| Counsel for Prisoner | Address |
|---|---|
| DAVE HURD | |

| District Attorney Representative | County |
|---|---|
| RAY ARMSTRONG | ORANGE |

## PAROLE HEARING CALENDAR

*This form and the panel's statement at the conclusion of the hearing constitute a proposed decision and order of the Board of Prison Terms. The decision becomes effective when issued following the decision review process.*

By:

| Presiding (Name) | Date |
|---|---|
| Concurring (Name) | Date |
| Concurring (Name) | Date |

| NAME | CDC NUMBER | INSTITUTION | CALENDAR | HEARING DATE |
|---|---|---|---|---|
| STAICH, IVAN | E-10079 | CTF | OCTOBER 2002 | 11/05/02 |

# EXHIBIT "C"

PSYCHOLOGICAL EVALUATION FOR
THE BOARD OF PRISON TERMS UPDATE CLINICAL EVALUATION
February 2006


CORRECTIONAL TRAINING FACILITY SOLEDAD
FEBRUARY 4, 2006


NAME:                   STAICH, IVAN
CDC#:                   E-10079
DOB:                    6-30-56
OFFENSE:                PC 187 MURDER SECOND DEGREE
SENTENCE:               15 YEARS TO LIFE, ORANGE COUNTY
EVALUATION DATE:        2/3/06


I.    IDENTIFYING INFORMATION:

Mr. Ivan Staich is a 49 year old, Caucasian, single, first term male from Orange County that is serving a 15 year to life sentence for murder second degree. He has 23 years in custody.

SOURCES OF INFORMATION:

This evaluation is based upon 2 separate 2 hour-interviews plus review of the central file and medical file.

This evaluation is being conducted at the request of the Senior Psychologist. Mr. Staich submitted a 602 appeal requesting that his last psychological evaluation by William Gamard, PhD at CTF Soledad dated 2/25/02 be corrected. On page 7 of that evaluation, Dr. Gamard had stated that Mr. Staich has, "a pattern" of possessive jealousy towards girlfriends and an inability to tolerate being rejected by them or to allow them to be possessed by any other man. Mr. Staich stated that Mr. Gamard was not aware of the true facts of his relationship with women and as a result erroneously concluded that there's a pattern there when the facts do not substantiate this. His appeal was considered and a new psychological evaluation was ordered.

In order to analyze Mr. Staich's relationship with former girlfriends, his version is listed. Mr. Staich has been found guilty by the court. This is not to retry his case, just to document his explanation of the events.

STAICH, IVAN
CDC# E-10079
2/3/06
PAGE 2

Mr. Staich reports that the first girlfriend that he was accused of threatening was
Cindi Sue Dustin. He was living with her for two years. He was employed as a
tree trimmer. Someone burned Cindi Sue's aunt and uncle's building where they
were manufacturing trailers. Since they did not like Ivan living with their niece
Cindi Sue, they blamed Ivan for this arson. Cindi Sue joined them and also
blamed him. Ivan was arrested and placed in the Riverside Jail. While in the
holding cell Ivan Staich was questioned by men in the cell that were members of
the Arian Brotherhood about why he was there. After explaining this and also
explaining that he was innocent, the Arian Brotherhood inmates became upset
with Cindi and so they wrote a letter to her telling her to leave Ivan Staich alone
and not have anything to do with him. He agreed to this letter. However, the
District Attorney found this letter in the mail and planned to charge all of the
Arian Brotherhood individuals in the cell with threatening Cindi Sue. Mr. Staich
realized that if he allowed this to happen he would become an enemy of the Arian
Brotherhood and his life would be in jeopardy, especially because he was in
custody with them and had no way to avoid contact with them. As a result, Mr.
Staich reports the District Attorney stated that if he did not plead guilty to this
threatening letter written by the Arian Brotherhood that he would go ahead and
charge all of the individuals involved. As a result Mr. Staich accepted
responsibility for the letter, plead guilty, and received a five year sentence in
Federal Prison for this letter. He was later found innocent of the charge of arson.

He goes on to report that he then met and developed a relationship with the victim
in the commitment offense. This victim, Cynthia, wrote him love letters and sent
nude photographs to him while he was in Federal custody. She professed to love
Mr. Staich and would visit him in his Federal halfway house where they had a
sexual relationship. Mr. Staich says he kept these nude photos and love letters as
evidence. Mr. Staich stated that he was very infatuated with Cynthia and when he
learned she had a boyfriend he called the boyfriend on 6/26/83. The boyfriend,
the victim in the commitment offense, lied to him and stated that he did not have a
relationship that was serious with Cynthia. He denied that he had threatened the
boyfriend or Cynthia at that point. He had written a letter to Cynthia asking her to
not play games with him and to be straight with him. He stated, "You better run
for the hills if you don't give me an answer." When he was released from custody
he tried to see Cynthia at her home. She had invited him over to the house. He
had no idea that the male victim had married Cynthia at that time and he had no
idea that he was in the home. He stated that he rang the doorbell, cut telephone

STAICH, IVAN
CDC# E-10079
2/3/06
PAGE 3

lines in case his visit would be interrupted with an unwelcome phone call, made the bad mistake of kicking through the door, and discovered that the male victim was armed with a loaded weapon and then began shooting at Mr. Staich. Mr. Staich was shot three times. Thinking that he was going to die, he struggled with the victim and during this struggle the victim was shot twice. During this struggle Mr. Staich was badly wounded and was fighting for his life. He stated that he did hit the victim in the head with a hammer that he had because he was trying to stop him from shooting at him during their struggle. When the victim fell down Mr. Staich stated that he tried to get out of the house and he was shot at by Cynthia who unknown to him was firing the pistol at him with blanks in it. He tried to stop her by hitting her in the head with the gun that the male victim had used on him. He denies that she had serious brain damage as a result of this. In fact he stated that she continued to write love letters and nude photos to him after he was placed in custody for this charge.

Mr. Staich while in custody married Paula. He married Paula in 1990 and she would come and visit him at Folsom Prison. He remained married to Paula for 4 years and he stated he loved her very much. They had a good relationship until he learned from other inmates that she was promiscuous and that she was using drugs. He admitted that he wrote Paula angry letters about this situation but he denied threatening her or using any kind of violence against her.

Mr. Staich stated that he is engaged to be married now and that he has a very loving relationship with his fiancé that he plans to live with as soon as he is released from custody.

Mr. Staich claims that in view of the detailed explanation of his relationship with women noted above, there is insufficient evidence to support the conclusion that he has a "pattern of possessive jealousy towards girlfriends" that is related to his behavior. He stated that the District Attorney that was assigned to his murder second degree trial was determined to get a murder first conviction. He says that as a result, he was falsely accused of threats toward the victim that he never made.

STAICH, IVAN
CDC# E-10079
2/3/06
PAGE 4

## CLINICAL ASSESSMENT

II.    CURRENT MENTAL STATUS/TREATMENT NEEDS

Mr. Staich was alert and well oriented throughout the interviews. He does wear a beard that is associated with his Nazarite religious beliefs that requires that he not cut his beard. His thinking was thinking, rational, and coherent. His speech was normal, fluent and goal oriented. Eye contact was very good. Intellectually he's functioning in the average ranges. Affect was appropriate. There's no evidence of anxiety or depression. He related during the interviews in an earnest, sincere, concerned manner because he wanted to get the facts of his case straight. His judgment was intact. His memory was intact. His insight and self awareness appears to be very good.

In order to understand Mr. Staich's current level of functioning the Minnesota Multiphasic Personality Inventory-II was administered. The validity indicators were all in the normal range, except defensiveness. He described himself in a very positive way.   Mr. Staich was somewhat defensive in his response pattern. He did not obtain any scores in the clinical range. All of his scores were in the average range. Looking at his pattern of scores he was described as being an extroverted, sometimes superficial naive individual. He's very optimistic and he attempts to avoid unpleasant situations. He does have genuine concern about social problems. He has normal masculine interests. He is a sensitive person who thinks clearly and rationally. He is gregarious and outgoing. There's no evidence of antisocial thinking or values in the test results although this needs to be interpreted with caution due to elevated scores on the L and K scales. There's no evidence of drug or alcohol abuse tendencies.

## CURRENT DIAGNOSTIC IMPRESSIONS:

Axis I:    No mental disorder
Axis II:   No personality disorder
Axis III:  History of gun shot wounds and lower back and neck pain
Axis IV:  Life term incarceration
Axis V:   Current GAF: 90

STAICH, IVAN
CDC# E-10079
2/3/06
PAGE 5


III.    REVIEW OF LIFE CRIME

Mr. Staich accepts full responsibility for the victim's death. He openly accepts the fact that he has been irresponsible and impulsive and that this has caused hurt, pain and the death of the victim. He is very remorseful about his past behavior. He stated that since he was incarcerated on this offense he has accepted Jesus Christ as his Lord and Savior. He's very aware of bible principles and he tries to live according to biblical standards, pleasing God by his dedication and behavior. His faith in Christianity appears to be very sincere and genuine. His feelings of remorse about his life before he became a Christian as well the commitment offense appear to be very sincere and genuine also. He openly admitted that he used very poor judgment in his selection of girlfriends and that he is determined not to make these kinds of mistakes in the future.

The description of the commitment offense in the probation officer's report describes an attack on the male victim while he was laying on the floor, being shot in the head five times. Mr. Staich stated he has court transcripts showing this is not at all true. He said some of the jury saw this offense as self-defense and wanted a manslaughter conviction. The victim was shot during the struggle for the gun while Mr. Staich was severely wounded. This is not to try to diminish his responsibility at all but to simply clarify the record and tell the truth about the commitment offense.

STAICH, IVAN
CDC# E-10079
2/3/06
PAGE 6

IV.    <u>ASSESSMENT OF DANGEROUSNESS</u>

    A.    In considering potential for dangerous behavior in the institution, there is no evidence of any participation in violence, possession of weapons, or assaults on others. His disciplinaries only have to do with wearing his hair and beard long in violation of institutional grooming standards. He did receive a SHU term in 1996 for mailing a threatening sounding letter to his wife. Mr. Staich has matured socially, morally, and spiritually since his incarceration. He is a much different individual now than at the time of the commitment offense. His potential for violence in the institution is definitely below average in comparison to other inmates.

    B.    His potential for dangerous behavior if released to the community is estimated to be no higher than the average citizen in the community. This is based on the fact that his recent MMPI-II shows him to be a very nonaggressive, thoughtful, prosocial individual who does not have any evidence of personality disorder or antisocial thinking or values although again, this needs to be interpreted with some caution. He openly admits making mistakes when he was younger and he is very remorseful for them.

        Level of Service Inventory-Revised was administered. This is an actuarial measure that accesses criminal history, disciplinary record, substance abuse history and other factors to access risk level. His score places him at the 1.8 cumulative frequency for prison inmates. This means that if 100 men are released on parole, he would do better than 98 of them. This is an extremely low risk level.

    C.    While there are no significant risk factors in this case, he does not have a substance abuse problem.

Staich        E-10079        CTF-Soledad        2/3/06        ML

STAICH, IVAN
CDC# E-10079
2/3/06
PAGE 7

V.     CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS

There are no mental or emotional problems in this case that would interfere
with parole planning. He has obtained vocational training in vocational
motorcycle repair, vocational welding and vocational woodshop. He has
worked throughout his life and he has a very strong work ethic. He currently
has some physical problems due to his gunshot wound and the bullet
fragments that he still carries as well as his back problems. However, he is
very interested in working when he is released from parole. He does have
strong family support as well as a fiancé that is waiting for him to be released.
He does have valid residence placement as well as job offers. The prognosis
for successful adjustment in the community in this case is excellent.


M. Macomber, Ph.D.
Correctional Psychologist
Correctional Training Facility, Soledad


B. ZIKA, Ph.D.
Senior Psychologist
Correctional Training Facility, Soledad


MM/ml

D: 2/3/06
T: 2/23/06


Staich          E-10079          CTF-Soledad          2/3/06          ML

NAME AND NUMBER    STAICH / E10079    CTF CA?    HOUSE- C-137    CDC-128-C

## "PHYSICAL LIMITATIONS"

1. BASED ON THIS INDIVIDUAL'S:

- ✓ acute *medical* condition
- ___ chronic *medical* condition
- ___ temporary disability
- ___ permanent disability (see 1845)
- ___ impacting placement
- ___ yes ___ no ___

2. THE FOLLOWING ACTIVITY RESTRICTIONS ARE RECOMMENDED:

*movement/position*

- ✓ no prolonged standing (not longer than 30 minutes every ___ minutes)
- ✓ no prolonged sitting (not longer than 15 minutes every ___ minutes)
- ✓ no climbing
- ✓ no bending, stooping or twisting
- ✓ no lifting over 15 pounds
- ✓ no crawling
- ✓ no prolonged walking (not more than 200 feet without resting)
- ___ no use of (R / L / both) arm (s)    Restrictions: _____
- ___ no weight bearing (R / L) leg
- ___ limited weight bearing (R / L) leg
- ___ other _____

*environment:*

- ___ may not work around heat
- ___ may not work around or use machinery
- ___ may not work at heights
- ___ may not work with hands in water
- ___ may not work outdoors
- ___ may not work in dusty areas
- ___ other _____

3. START DATE:    6-24-05

4. END DATE:    6-23-06    Duration: (approx) 1 yr.

5. AUTHORITY: _C L Sinnac__    6-24-05
              PHYSICIAN    Cesar L. Sinnace, M.D.    DATE
                           Physician and Surgeon, CTF

ORIG: C-FILE
COPY: UNIT SGT.
      INMATE
      CONTROL
      CCI
      ASSIGN. LT.
      CHIEF NURSE
      MEDICAL FILE
      CHRONO FILE



NAME AND NUMBER  STARCEY  E-00799    CDC-128-C  4uu'    CDC-128-C

Inmate  STACH    clk for a medical condition should be housed in a lower bunk location.

DURATION— 19r

ORIG.  C-FILE
COPY  UNIT SGT
      INMATE          STAFF PHYSICIAN
      CCI.
      ASSIGN LT.                    Cesar L. Simaco, M.D.
      CONTROL                       Physician and Surgeon, CTF
      MEDICAL FILE
      CHRONO FILE

DATE  6-29-05                CTF    MEDICAL-PSYCHIATRIC-DENTAL

## RADIOLOGY REPORT

NAME: STAICH, Ivan   NUMBER: E-10079   DATE: 03/17/94

DOCTOR: Tur   HOUSING: 3C

HISTORY: Old back injury at L5-S1, disc wounded. Old gunshot wound neck. (has bullet in chest).

CT LUMBAR SPINE:

CT scan of the lumbar spine examination has been done with axial sections through the five lumbar vertebral bodies and also sagittal reconstruction. Lumbar spine examination consist of 5 mm bone and soft tissue density settings through the lumbar spine. At the 5-1 level no definite lumbar disc herniation is noted. There is facet arthropathy but this does not narrow the lateral recesses. Minimal ligamentous thickening is noted at the L5 level anterior the laminae. At the 4-5 level there are findings consistent with central disc herniation which obliterates also to the epidural fat on the right side and may contain a small calcified focus. This acutally would be better demonstrated with MRI if indicated clinically. Facet arthropathy is moderate at this level narrowing the lateral recesses. At the 3-4 level there is a small broad based bulge but no significant lumbar spinal stenosis set at the more cephalad levels. No herniation is identified.

IMPRESSION:
1. At the L5-S1 level minimal facet arthropathy but no definite lumbar disc herniation.
2. At L4-5 there is moderate facet athropathy slightly narrowed in the lateral recesses combined with the central and slightly right sided disc herniation obliterating epidural fat on the right side.
3. At the L3-4 level there is a mild broad base disc bulge but no facet arthropathy.

Thomas MacLennan, M.D.

Dictated:03/17/94 TM:rds
Original: Medical Chart
cc: X-Ray Jacket

STAICH, IVAN   E10079   4B4L-36R

Due to his musculoskeletal problems this inmate needs to be able to stay in a lower bunk on a lower tier. This chrono will be effective for one year, dating from February 25, 1997 through February 25, 1998 at which time he will be reevaluated by the Medical Department.

Khamnung Thirakomen, M.D.

Reviewed by L. Loo, M.D., H.C.M.

ORIG: Unit Health Record
cc: C-File
4BCCII
Inmate

February 25, 1997   ru   CSP-Corcoran

MEDICAL—PSYCHIATRIC—DENTAL

NAME AND NUMBER:  STAICH, IVAN  E-10079  3C 01 133L  CDC-128-C

Chronic low back pain with facet arthropathy two bulging disc. NO
lifting over 15 lbs., stooping, or bending indefinitely.

CC:  C-FILE
     MEDICAL RECORD
     CC-II
     HOUSING OFFICER
     INMATE
     ASSIGNMENT LT.
     SUPERVISOR
     YVONNE KEIGHER

Juan Tur, M.D.
Staff Physician

70°
(941
(93)
MEDICAL

# X-RAY REPORT

CORCORAN STATE PRISON HOSPITAL

NAME  STAICH                           NO.  E-10079        DATE  5-6-92

X-RAY OF  Lumbar Spine (2 views)       ORDERED BY  Dr. Burvant

CLINICAL DATA  C/O low back pain

The bone architecture and alignment are normal. There is a bullet in the left
flank.  Small pieces of shrapnel are identified at the level of L-1 in the soft tissue
of the left back.  Intervertebral disc narrowing at L-4/L-5 to a moderate degree is seen
and more significantly at L-5/S-1 with an early gas disc change.  Posterior elements are
normal.

Impression:  Probable L-4/L-5 intervertebral disc disease and definite L-5/S-1
intervertebral disc disease.

S. Silverback, M. D.

NAME AND NUMBER STAICH      E-10079      G 120 L        CTF-Central      CDC-128-C

Inmate STAICH, E-10079, due to a medical condition (herniated lumbar disc and gerd), should be housed in a lower bunk
and lower tier.

DURATION:  12 months.

ORIG:  C-FILE
COPY:  UNIT SGT.
       INMATE
       CONTROL
       ASSIGN. LT.
       CCI
       MEDICAL FILE
       CHRONO FI D

C. SINNACO, M.D.
STAFF PHYSICIAN
CORRECTIONAL TRAINING FACILITY

Saunders
V.
Horn,
959 F.S
at

# X-RAY REPORT

## FOLSOM STATE PRISON HOSPITAL

NAME ___STAICH___                          NO. __E-10079___     DATE __9-24-91__

X-RAY OF ___Upper GI___                    ORDERED BY ___Dr. Milliman___

CLINICAL DATA _____In

      The patient swallowed the barium easily and the structure and function of the esophagus is seen to be normal. A small intermittently-produced uncomplicated sliding axial hiatal hernia with observed reflux is identified. The stomach itself has a normal shape, rugal pattern, and peristalsis. There are a few small fragments of shrapnel noted in the left upper quadrant. There is a question as to whether the patient had a splenectomy. The duodenal cap, loop, sweep, and proximal small bowel are normal.

      Impression: Hiatal hernia with reflux.

      Probable splenectomy.

                                 S. Silverbach, M. D.

SS/mrt 9-24-91                         VGA 149

NAME AND NUMBER:     STAICH, IVAN   E10079    3C04-122L        CDC-128

This inmate has chronic allergies. It would be appreciated if this
taken into account when he is transferred to another institution.

                               _Bert A Hoffman_ M.D.
                                Bert Hoffman, M.D.

CC:  C-FILE                              _Reviewed by: Dr. Loo, CMO (A)_
     UNIT HEALTH RECORD

DATE:  dr     8/9/95                     CSP/CORCORAN                MEDICAL

STATE OF CALIFORNIA                                                                              DEPARTMENT OF CORRECTIONS

## COMPREHENSIVE ACCOMMODATION CHRONO    *C - 137*

> **INSTRUCTIONS:** A physician shall complete this form if an inmate requires an accommodation due to a medical condition. Circle P if the accommodation is to be permanent, or T if the accommodation is to be temporary. If the accommodation is temporary, write the date the accommodation expires on the line. A new form shall be generated when a change to an accommodation is required or upon renewal of a temporary accommodation. Any new form generated shall include previous accommodations, if they still apply. Chronos indicating permanent accommodations shall be reviewed annually. This form shall be honored as a permanent chrono at all institutions.

### A. HOUSING

| | | | | |
|---|---|---|---|---|
| None | | | | |
| Barrier Free/Wheelchair Access | P / T | | Bottom Bunk | P /(T) |
| Ground Floor Cell | P / T | | Single Cell (See 128-C date: ___ ) | P / T |
| Continuous Powered Generator | P / T | | Permanent OHU / CTC (circle one) | P / T |
| | | | Other ___ | P / T |

### B. MEDICAL EQUIPMENT/SUPPLIES

| | | | | |
|---|---|---|---|---|
| None | | | Wheelchair: (type) ___ | P / T |
| Limb Prosthesis | P / T | | Contact Lens(es) & Supplies | P / T |
| Brace | P / T | | Hearing Aid | P / T |
| Crutches | P / T | | Special Garment: | |
| Cane: (type) ___ | P / T | | (specify) ___ | P / T |
| Walker | P / T | | Rx. Glasses: ___ | P / T |
| Dressing/Catheter/Colostomy Supplies | P / T | | Cotton Bedding | P / T |
| Shoe: (specify) ___ | P / T | | Extra Mattress | P / T |
| Dialysis Peritoneal | P / T | | Other ___ | P / T |

### C. OTHER

| | | | | |
|---|---|---|---|---|
| None | | | Therapeutic Diet: (specify) ___ | P / T |
| Attendant to assist with meal access and other movement inside the institution. | P / T | | Communication Assistance | P / T |
| Attendant will not feed or lift the inmate/patient or perform elements of personal hygiene. | | | Transport Vehicle with Lift | P / T |
| | | | Short Beard | P / T |
| Wheelchair Accessible Table | P / T | | Other ___ | P / T |

### D. PHYSICAL LIMITATIONS TO JOB ASSIGNMENTS

Based on the above, are there any physical limitations to job assignments?    ☒ Yes    ☐ No

If yes, specify: *See attached*

| INSTITUTION  *CTF* | COMPLETED BY (PRINT NAME)  **Timothy Friederichs, M.D.**  **Physician & Surgeon** | TITLE |
|---|---|---|
| SIGNATURE  *T. Friederichs* | DATE  *7-10-06* | CDC NUMBER, INMATE (LAST, FIRST, MI) AND DATE OF BIRTH  Soledad |
| HCM/CMO SIGNATURE  *CLiu* | DATE  *7-17-06* | *E 100 79* |
| (CIRCLE ONE)    (APPROVED) / DENIED | | *Staich, Ivan*  *6-30-56* |

### COMPREHENSIVE ACCOMMODATION CHRONO

CDC 7410 (03/04)

NAME AND NUMBER  *Staicl*  *E 100 79*      CTR/ON   HOUSE- *C-137*      CDC-128-C

## "PHYSICAL LIMITATIONS"

1. BASED ON THIS INDIVIDUAL'S:

☐ acute *medical* condition
☑ chronic *medical* condition
☐ temporary disability
☐ permanent disability (see 1845)
impacting placement
yes _____   no _____

2. THE FOLLOWING ACTIVITY RESTRICTIONS ARE RECOMMENDED:

*movement/position*

☑ no prolonged standing (not longer than *30* minutes every *60* minutes)
☑ no prolonged sitting (not longer than *30* minutes every *60* minutes)
☐ no climbing
☑ no bending, stooping or twisting
☑ no lifting over *20* pounds
☐ no crawling
☐ no prolonged walking (not more than _____ feet without resting)
☐ no use of (R / L / both) arm (s)  Restrictions _____
☐ no weight bearing (R / L) leg
☐ limited weight bearing (R / L) leg
☐ other

*environment*

☐ may not work around heat
☐ may not work around or use machinery
☐ may not work at heights
☐ may not work with hands in water
☐ may not work outdoors
☐ may not work in dusty areas
☐ other

3. START DATE    *7-10-06*

4. END DATE      *7-10-07*    >  Duration: (approx)  *1 yr*

5. AUTHORITY: _____     *7-10-06*
                    PHYSICIAN                          DATE
                 **Timothy Friederichs, M.D.**
                 **Physician & Surgeon**
                 **CTF Soledad**

ORIG: C-FILE
COPY: UNIT SGT.
      INMATE
      CONTROL
      CCI
      ASSIGN. LT.
      CHIEF NURSE
      MEDICAL FILE
      CHRONO FILE

# Certificate Of Completion

*Awarded To*

## Von Stuich

*On this Thursday, December 22, 2005 for faithfully completing 12 weeks of prescribed studies in the class for:*

## ANGER MANAGEMENT

He has acquired life skills based on Christian principles taken from Scripture.
These skills will help him to handle anger in all forms.
He has mastered the 13-step interactive program.
He is to be congratulated for his outstanding effort in this course.

David Ewart, Instructor

Judge C. Lindsey, Protestant Chaplain

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABIL
CDC-128

NAME and NUMBER:    STAICH, I.    E10079    CW-137U

This inmate has completed the 12-week Anger Management Class conducted in the Protestant Chapel. He now knows: the ways to handles anger; understanding how pride, fear, lonliness and inferiority feed your anger; uncovering the myths that perpetuate anger; identifying learned patterns of relating, thinking, and behaving in yc life that influence your anger. The 13-step interactive program was accomplished by the student. He now has the knowledge and understanding to deal with stress in a non-destructive manner. He is to be congradulated for his outstanding effort.

ORIG    : C-File
cc      : Chaplain
        : Inmate

Judge C. Lindsey
Protestant Chaplain
CTF-Soledad

DATE  December 8, 2005        LAUDATORY CHRONO        INFORMATIONAL CHRO



# Certificate of completion

Awarded to:

## Ivan Von Staich

On this 23rd day of February 2006 for faithfully completing
the "Healing For The Angry Heart" video series in

# ANGER MANAGEMENT

He has acquired these skills through practical biblical insights
to deal with heart issues, discovered the secret to being heard,
learned to release guilt, trust again and break habit cycles.

Richard Mireles
Education Deacon,
C.T.F Central Chapel

Judge C. Lindsey
Protestant Chaplain
C.T.F Triplex Facility

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDC-128 B (8-87)

NAME and NUMBER:    STAICH, I.    E10079    CVW-137U

This inmate has completed Lisa Bevere's "Healing for the Angry Heart" video series. This series provides practical, biblical insights to help deal with the past and move forward in life. It does this by teaching how to deal with heart issues, discover the secret to being heard, release yourself of the guilt, learn to trust again, and break habit cycles. He is to be commended for his diligent efforts in completing this series and applying its concepts to his everyday life.

Judge C. Lindsey
Protestant Chaplain
CTF-Soledad

cc    ORIG    : C-File
      : Chaplain
      : Inmate

DATE: February 23, 2006    LAUDATORY CHRONO    INFORMATIONAL CHRONO

# Certificate of Completion

*This document certifies that*

## Ivan Von Staich

*has successfully completed*

### Anger Management/Fatherhood

*awarded this*  1  *day of*  October  2005

_____
(Instructor)



Name and Number:          Staich, I          E11079          CW-137U          CDC-128B (Rev.4/74)

Inmate Staich has successfully participated in and completed the Muslim Development Center's -
(Twelve-week) Anger Management Course. The course is based on principles rooted in Interfaith
Religious Scripture and spiritual models of exemplary social behavior. Inmate Staich is
commended for his outstanding participation and completion of the Interfaith based Anger
Management Course and was awarded a Certificate of Completion.

_____
Imam Antar Jayftah
Muslim Chaplain
Correctional Training Facility - Central

Date: 11/19/2005

Original: C-File
cc:  Chaplain File
     Inmate

(Anger Management Course Completion)    GENERAL CHRONO

# LAUBACH LITERACY ACTION

## VOLUNTEER TUTOR WORKSHOP

### CERTIFICATE OF COMPLETION

This is to recognize that **Ivan Von Staich**

has satisfactorily completed a ___12___ hour workshop with emphasis on tutoring

__Literacy__ (Literacy/ESL) sponsored by a Laubach Literacy Action member program,

and/or conducted by an LLA certified trainer.



U.S. PROGRAM OF
LAUBACH LITERACY INTERNATIONAL

**Reading Opportunities**

Program

Trainer

Executive Director, Laubach Literacy Action
Peter A. Waite

President/CEO, Laubach Literacy International
Bob Leavey

Date  06-02-2001

LLA 6

# UNIVERSITY OF CALIFORNIA, LOS ANGELES UCLA EXTENSION

*This is to certify that*

Ivan Von Staich

*has satisfactorily participated*
*in the* ARTSREACH *class: Creative Writing*



Date:  October 10, 1996

Director, Department of The Arts

## DECLARATION FROM SHELLEY WOOD

I, Shelly Wood, do declare the following is true and correct:

A)   I am currently engaged to be married to Ivan Von Staich. Ivan is a wonderful man who is talented, artistic and has great plans for the future.   I have personally written to the California Board of Prison Terms commissioners on several occasions, regarding the parole of Ivan.   Ivan and I are currently engaged to be married upon Ivan's release from State Prison.   I have a house in Mira Loma California that we plan to make our home.   Upon Ivan's release my home is available as his primary residence.   Both of my children are excited about our new family.   We have plans to be married and begin our lives together as soon as he is paroled.   In the past, I have had occasion to speak to Ivan's prison councilors' at CTF-Soledad.   I have assured the councilors', in the past, as I am today, that Ivan's parole plans include a stable home environment to begin his new life.

B)   I would like to state for the record, that I feel the California Prison System is holding Ivan illegally.   He has served over 23 years.   I have known Ivan for most of his life and have seen Ivan both educate himself and prepare for his new life. It does not make since for tax payers to continue to pay for his incarceration.   Ivan is not a violent man and has stood by his religious beliefs and lived as a peaceful and reasonable man during his incarceration.   We all have times in our lives when we may make some decisions that we wish we could change.   The fact is, Ivan is a man who only wants to live his life and have a family like all Americans.   There just is no justice in his

continued incarceration. The circumstances that put him in prison occurred nearly 25 years ago. Ivan deserves to be judged by his actions today and the steps he has taken to improve himself and educate himself into a productive law abiding citizen. Actions 25 years ago were tried and decided, while important to the issue they are in the past. Ivan today is what is at issue in 2006. I mentioned that I have known Ivan for nearly his entire life, therefore I believe its worth mentioning that the records do not properly reflect the actual facts regarding his life as a child. Ivan in fact had a loving home with good social up bringing. Ivan's parents and brothers and sisters were brought up to respect each other and family in general. His family members have homes and businesses and still maintain their relationships with each other.

C) I believe its important to state what I know about the circumstance around the crime that Ivan was convicted. The women he was involved with in 1979 had many problems and of course in hindsight it was a bad relationship from the start. I know that Ivan was a victim of the circumstances before him. I realize many will not appreciate that opinion, but it is a fact. Ivan believed the women was in love with him, when in fact she was planning to marry another man named Robert Topper. Both victims, the women Cindy Sue Topper and Robbert Topper both had other plans and Ivan was in danger and did not know it. I had occasion to speak with Cindy Sue Topper and she admitted to me that Robert had planned to shoot Ivan. Both the victims had guns and were waiting for Ivan on the night of the incident. Ivan did not know that Robert Topper had plans to shoot Ivan and waited for him to arrive. I am not attempting to try this case again but to make it clear this was not a premeditated crime that Ivan planned to

commit. That being said Ivan has served nearly 24 years and neither what I say or what the authorities thought mattered. That fact is 24 years have passed and Ivan derserves a chance to start over.

D) The fact that I have know Ivan all these years allows me to state things as facts I know. The first is Ivan is not and never has been a drug or alcohol user. He deplores drugs and there physical and psychological effects on the mind and body. He is deeply religions and has been able to have long standing relationships even with the difficulties of being separated while he is incarcerated. Ivan's problems in his youth were unfortunate, but like all of us we made choices in the past we wish we could change.

I believe Ivan is ready to come home. I believe that if this parole board had the opportunity to question Ivan and take the time to read the reports of the Psychological review they would see that Ivan is and should be found suitable for parole. I am available to testify and provide any other information you may need. I pray that this Board follows the recommendations of the Professionals in Psychology and his record of being a inmate who works to better himself and improve himself and take the action necessary to free Ivan at this time. I can be reached at (951) 279-3418 regarding this declaration.

I, Shelley Wood state the above under penalty of perjury and that all the facts stated herein are true and correct, and this declaration was made within all laws of the State of California. This declaration was executed on this 5th day of June 2006, in the city of Mira Loma California.

Shelley Wood

EXHIBIT "D"

```
FILED

MAR 0 8 2007
KIM TURNER
Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By M. Murphy, Deputy
```

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF MARIN

In the Matter of the Application of:
JERRY RUTHERFORD (*et al.*),

           Petitioner,

for a Writ of *Habeas Corpus*

IVAN VON STAICH, class member.

Case No.: SC135399A

ORDER RE CLASS MEMBER
STAICH'S APPLICATION FOR A
WRIT OF *HABEAS CORPUS*

      The court has read and considered the application for a writ of *habeas corpus* filed on January 5, 2007 by class member Ivan Von Staich. In it, Mr. Von Staich complains about the scheduling of his parole hearing. He received a four-year denial on November 5, 2002, so that his subsequent parole consideration hearing should have taken place on or before November 5, 2006.

      The undersigned has been advised by class counsel that Mr. Von Staich's parole eligibility hearing is now scheduled for May 11, 2007, at 10:30 A.M. It therefore appears to the court that this application is moot. It is denied without prejudice to its renewal if the hearing does not go forward as scheduled.

Dated:  03-08-07

                                Verna A. Adams
                                Judge of the Superior Court

STATE OF CALIFORNIA )
COUNTY OF MARIN        )

IN RE: **JERRY RUTHERFORD**
ACTION NO.: **SC135399A**
(PROOF OF SERVICE BY MAIL – 1013A, 2015.5 C.C.P.)

I AM AN EMPLOYEE OF THE SUPERIOR COURT OF MARIN; I AM OVER THE
AGE OF EIGHTEEN YEARS AND NOT A PARTY TO THE WITHIN ABOVE-
ENTITLED ACTION; MY BUSINESS ADDRESS IS CIVIC CENTER, HALL OF
JUSTICE, SAN RAFAEL, CA 94903.  ON **March 8, 2007** I SERVED THE WITHIN
***ORDER RE CLASS MEMBER STAICH'S APPLICATION FOR A WRIT OF
HABEAS CORPUS*** IN SAID ACTION TO ALL INTERESTED PARTIES, BY
PLACING A TRUE COPY THEREOF ENCLOSED IN A SEALED ENVELOPE WITH
POSTAGE THEREON FULLY PREPAID, IN THE UNITED STATES POST OFFICE
MAIL BOX AT SAN RAFAEL, CA ADDRESSED AS FOLLOWS:

| | |
|---|---|
| *IVAN VON STAICH*<br>*CDC# E-10079*<br>*CORRECTIONAL TRAINING FACILITY*<br>*PO BOX 689*<br>*C-WING – 137 U*<br>*SOLEDAD, CA 93960-0689* | *WARDEN*<br>*CORRECTIONAL TRAINING FACILITY*<br>*PO BOX 689*<br>*SOLEDAD, CA 93960-0689* |
| *ATTORNEY GENERAL*<br>*ATTN: ANYA BINSACCA*<br>*CORRECTIONAL LAW SECTION*<br>*455 GOLDEN GATE AVENUE*<br>*12TH FLOOR*<br>*SAN FRANCISCO, CA 94102* | *UNCOMMON LAW*<br>*1300 CLAY STREET*<br>*SUITE 600*<br>*OAKLAND, CA 94612* |
| *PRISON LAW OFFICE*<br>*2173 EAST FRANCISCO BLVD.*<br>*SUITE M*<br>*SAN RAFAEL, CA 94901* | |

*I CERTIFY (OR DECLARE), UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE
STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT.*

DATE: 3/8/07

## PROOF OF SERVICE BY MAIL

### BY PERSON IN STATE CUSTODY
(C.C.P. §§ 1013(A), 2015.5)

I, **IVAN VON STAICH**_____, AM A RESIDENT OF THE STATE OF CALIFORNIA, COUNTY OF MONTEREY. I AM OVER THE AGE OF 18 YEARS AND I AM A PARTY TO THE WITHIN ACTION. MY PRISON ADDRESS IS:

**(Prison No. E-10079)**
CORRECTIONAL TRAINING FACILITY
P.O. Box 689, Rm: **C-Wing-137u**
SOLEDAD, CA 93960-0689.

ON _March 3rd_____, 20_07_____, I SERVED THE ATTACHED:

**PETITION FOR WRIT OF HABEAS CORPUS WITH EXHIBIT "A" THROUGH "D" ATTACHED.**

ON THE PARTIES HEREIN BY PLACING A TRUE AND CORRECT COPY THEREOF, ENCLOSED IN A SEALED ENVELOPE (VERIFIED BY PRISON STAFF), WITH POSTAGE THEREON FULLY PAID, IN THE UNITED STATES MAIL IN A DEPOSIT BOX SO PROVIDED AT THE ABOVE-NAMED CORRECTIONAL INSTITUTION IN WHICH I AM PRESENTLY CONFINED. THE ENVELOPE WAS ADDRESSED AS FOLLOWS: **CALIFORNIA APPELLATE COURT**
**First Appellate District**
**350 McAllister St.,**
**San Francisco, Ca. 94102**

**OFFICE OF THE ATTORNEY GENERAL**
**455 GOLDEN GATE AVENUE, SUITE 11000**
**SAN FRANCISCO, CA 94102**   **MARIN COUNTY SUPERIOR COURT**
**3501 Civic Center Dr.**
**San Rafael, Ca. 94913-4988**

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED ON _March 3rd_____, 20_07____.

**IVAN VON STAICH E-10079**
(DECLARANT'S SIGNATURE & CDC NUMBER)
**IVAN VON STAICH, Prison No. E-10079**